DAVID J. COOK, ESQ. (State Bar # 060859)
ROBERT J. PERKISS, ESQ (State Bar # 62386)
COOK COLLECTION ATTORNEYS
A PROFESSIONAL LAW CORPORATION
165 Fell Street
San Francisco, CA 94102
Mailing Address: P.O. Box 270
San Francisco, CA 94104-0270
Tel: (415) 989-4730
Fax: (415) 989-0491
File No. 52,507

Attorneys for Plaintiffs
STEVEN M. GREENBAUM, ALAN HAYMAN,
and SHIRLEE HAYMAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| STEVEN M. GREENBAUM, ALAN HAYMAN, and SHIRLEE HAYMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>ISLAMIC REPUBLIC OF IRAN, et al.,<br><br>Defendant. | CASE NO. 2:08-CV-00740-GAF (SSx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO STATEMENT OF INTEREST OF THE UNITED STATES<br><br>Date: June 23, 2008<br>Time: 9:30 a.m.<br>Courtroom: 740<br>Judge: Gary A. Feess |

## I. PRECISE ISSUE AT HAND.

The precise issue at hand is whether a claim against a sovereign entity is subject to an involuntary assignment, and therefore, enforcement by the assignee, trustee, subrogee, or third party. This is the precise issue raised by virtue of this assignment motion, and by which the United States ("U.S.") conflates assignment remedies with traditional principles of levy and execution.

These Plaintiffs concede that a levy and execution by way of a garnishment upon the U.S. would be wholly ineffective. See *Dep't of the Army v. Blue Fox*, 525 U.S. 255, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999), and Plaintiffs do not argue or claim any exception to this rule. However, despite the breadth of the Statement of

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO STATEMENT OF INTEREST OF THE UNITED STATES - CASE NO. 2:08-CV-00740-GAF (SSx)

1

Interest, the Statement of Interest itself fails to come to gripes with the fact that an assignment is a distinctly different remedy. The key statement in the Statement of Interest is found at page 12, paragraph 2, lines 10-14, which provides as follows:

> "An assignment of any hypothetical future award, which would have the effect of requiring the United States to pay funds from the U.S. treasury directly to Plaintiffs (rather than Iran), would therefore be no different from the attachment or garnishment of a pending payment from the U.S. Treasury."

This analysis is incorrect, and in fact, pure assignments by any means, are permissible. This is precisely the holding of *United States vs. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207 (1949), in which the court stated as follows:

> "The rigor of this rule was very early relaxed in cases which were thought not to be productive of the evils which the statute was designed to obviate. And one of the first such exceptions was to transfers by operation of law. In United States v. Gillis, 95 U.S. 407 (1877), the Court held that a provision in the Act creating the Court of Claims that suits on assignments may be brought in the name of the assignee did not mean that R.S. § 3477 was inapplicable to suits in the Court of Claims, but referred to claims which were excepted from the prohibition of that statute, such as "devolutions of title by force of law, without any act of the parties, or involuntary assignments, compelled by law." During the following term, a case was presented in which an assignee in bankruptcy had sued the United States on a claim of the bankrupt. This Court held the suit maintainable despite R.S. § 3477, on the ground that The act of Congress of Feb. 26, 1853, to prevent frauds upon the treasury of the United States, which was the subject of consideration in the *Gillis* case, applies only two cases of voluntary assignment of demands against the government. It does not embrace cases where there has been a transfer of title by operation of law. The passing of claims to heirs, devisees, or assignees in bankruptcy are not within the evil at which the statute aimed; nor does the construction given by this court deny to such parties a standing in the Court of Claims. Erwin v. United States, 97 U.S. 392, 397 (1878)." (P. 373)

This was likewise restated in *Insurance Co. of the West vs. United States*, 243 F.3d 1367 (Fed. Cir., 2001), in which the court stated as follows:

> "It is true that the waiver of sovereign immunity under the Federal Tort Claims Act is particularly sweeping. See Nordic Village, Inc., 503 U.S. at 34. However, nothing in Aetna suggested that its holding regarding sovereign immunity was based on the Federal Tort Claims Act's broad language. Instead, we think that Aetna reflects a broader and more generally applicable legal principle: waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary assignments or assignments by operation of law, where the statutory waiver of sovereign immunity is not expressly limited to waivers for claims asserted by the original claimant." (P. 1373)

The Supreme Court in an earlier case of *Western Pacific Railroad Company vs. United States*, 268 U.S. 271, 45 S.Ct. 503 (1925), stated as follows:

> "3. The government further contends that, as to the claims for transportation furnished by the Western Pacific Railway and its receivers which were acquired by the claimant under the special master's deed, a recovery is precluded by § 3477 of the Revised Statutes. This section provides, *inter alia,* that all transfers and assignments of any claim against [45 S.Ct. 505] the United States shall be "absolutely null and void" unless made after the allowance of such claims and the ascertainment of the amount due. The object of this section is to protect the government and prevent frauds upon the Treasury. It applies only to cases of voluntary assignment of demands against the government, and does not embrace cases where there has been a transfer of title by operation of law. *United States v. Gillis,* 95 U.S. 407, 4163; *Erwin v. United States,* 97 U.S. 392, 397; *Goodman v. Niblack,* 102 U.S. 556, 560; *Price v. Forrest,* 173 U.S. 410, 421. And see *Seaboard Air Line v. United States,* 256 U.S. 655, 657. In *Price v. Forrest, supra,* p. 422, it was specifically held that this section did not apply to the assignment of a claim to a receiver under the order of a court, this being "the act of the law." So here, the sale to the claimant of so much of the claims as had accrued to the receivers for transportation furnished by them was clearly a transfer by operation of law, and did not come within the prohibition of the statute." (P. 274)

This is not the first time that an aggrieved creditor has been frustrated by the defense of sovereign immunity in attempting to collect a debt against a third party, when the U.S. may owe money to the third party. This conundrum was resolved by the court in *Automatic Sprinkler Corporation of America vs. Darla Environmental Specialists Inc.*, 53 F.3d 181 (7th Cir. 1995), where the court suggested that the creditor's remedy was found in an involuntary bankruptcy, in which the court stated as follows:

> "Automatic Sprinkler had, and still may have, an alternative means to obtain partial payment. It can propel Darla into an involuntary liquidation. 11 U.S.C. Sec. 303(b)(2). A dissolved corporation is a "person" under the Bankruptcy Code of 1978. See 11 U.S.C. Sec. 101(33); In re Cedar Tide Corp., 859 F.2d 1127 (2d Cir.1988). Most states treat dissolved corporations as continuing to exist for some time, so that creditors may collect outstanding debts. See Model Business Corporation Act Secs. 14.06, 14.07. That is how it was possible for Automatic Sprinkler to sue Darla on the subcontract; it could as easily have put Darla into bankruptcy. The trustee appointed under Chapter 7 steps into the debtor's shoes and may collect the $450,000 on the same terms as Darla itself. Bankruptcy provides an orderly method of satisfying all creditors' claims (as the Rule 69 proceeding does not), of reducing the claims if all cannot be satisfied, and of protecting the United States from multiple or inconsistent claims to the same pot. At oral argument, Automatic Sprinkler could not explain why it had not

followed this route to orderly collection and distribution. Instead it sought to depict this as a case in which the United States would be unjustly enriched. The bankruptcy forum makes that an unlikely outcome. But if we are wrong, this would not be the first time sovereign immunity frustrated the vindication of just claims. Whether and how to mitigate that effect is a question for the political branches of government. Through the Miller Act and the Bankruptcy Code, they have specified particular mechanisms, which must be followed." (P. 183)

In *Automatic Sprinkler, supra*, the court clearly anticipated the fact that a direct suit against the U.S. surely would fail, including a levy, but on the other hand, that a trustee in bankruptcy might well be able to reach the same assets.

See also, ***Quarles Petroleum Company Inc. vs. The United States,*** 551 F.2d 1201 (Court of Claims, 1977). The test is first whether the sovereign entity has a liability to the judgment debtor (original obligee), and whether that particular obligation is barred under principles of sovereign immunity, and second, whether the transfer replaces the original obligee with a substitute. Directly on point is ***Quarles Petroleum Company Inc. vs. The United States,*** 551 F.2d 1201 (Court of Claims, 1977) ("*Quarles*") in which the court was faced with identical issues. In that case, corporate truck owners brought an action against the U.S. for recovery of damages under the Federal Water Pollution Control Act in which the trial court found that the action was brought on behalf of the insurer carrier. The court was initially faced with the issue whether the U.S. had sovereign immunity against a claim brought by the corporate trucking company, in which the court, after a detailed review, held that the U.S. was not entitled to sovereign immunity. (Page 1206). The next and relevant question was whether the insurer had standing by which to pursue the claim against the U.S. based upon the fact that the insurer was an "involuntary transferee." The court ruled adversely to the U.S. and stated as follows:

> "Neither the subrogation to the insurance carrier of the injured person's rights under the FTCA nor the doctrine of sovereign immunity has prevented the maintenance by the subrogated insurance company of suit against the United States under the FTCA." (Page 1206)

The court also stated as follows:

> "There would be no extension of liability of additional waiver of sovereign immunity against the United States by allowing a subrogee to recover through its insured owner-operator under Section 1321." (Page 1207)

This language resolves the tension between an involuntary assignment and sovereign immunity in which the court clearly held that sovereign immunity is not a bar to an involuntary assignment. *Quarles* stands for the proposition that sovereign immunity is not extended, nor enhanced when the party seeking to enforce those rights stands in the shoes of the original obligee, and that the transfer is involuntary. In that case, the transfer arose from an insurance contract. In this setting, the facts are even stronger, in that the successor to the rights of Iran are receivers (or assignees) who acquire their rights through the creation of a receivership estate. The U.S. cites an unpublished opinion, *Quaestor Investments, Inc. v. State of Chiapas*, 1997 WL 34618203 (C.D.Cal. 1997), which is inapposite, based upon the fact that the defendant debtor was a sovereign entity and that the object of the assignment was a bank account.

The changes to Foreign Sovereignty Immunities Act ("FSIA") specifically dealt with U.S. sovereign immunity under 28 U.S.C. § 1610(g)(2), as to property which is "regulated by the U.S." While it is true that this property is defined as "property of a foreign state," the U.S. does not dispute that its obligations owed to Iran constitute an Iranian asset. Accordingly, under 28 U.S.C. § 1610(g)(2), an Iranian "receivable" would properly be subject to levy.

*Price v. Forrest*, 173 U.S. 410, 421 clearly held that an assignment to a receiver, constituting a transfer by operation of law, is valid against the United States.

In summary, the U.S. cannot invoke sovereign immunity as a bar to an involuntary transfer, even if the involuntary transferee may seek to invoke the underlying right.

## II. DESCRIPTION OF ASSETS.

The assets capable of being assigned constitute Claim No. A-15(II.A. and

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO STATEMENT OF INTEREST OF THE UNITED STATES - CASE NO. 2:08-CV-00740-GAF (SSx)

5

II.B.), which are currently outstanding Also outstanding is Claim No. B-1, which likewise may have economic value. These claims are capable of being assigned in the context of an assignment order under C.C.P. § 708.510(a), which provides as follows:

> "Except as otherwise provided by law, upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor, or to a receiver appointed pursuant to Article 7 (commencing with section 708.610) all or part of a right to payment due or to become due, whether or not the right is conditional upon future developments, including but not limited to, the following types of payment:
>
> 1. Wages due from the federal government that are not subject to withholding under an earnings withholding order.
> 2. Rents.
> 3. Commissions.
> 4. Royalties.
> 5. Payments due from a patent or copyright.
> 6. Insurance policy loan value."

By the language of C.C.P. § 708.510(a), the rights may be due now, due in the future, or conditional upon future events, which by their nature would include contingent claims owed by the United States to Iran. Therefore, the fact that the claims are disputed or not due, does not exclude them from the class of assignable claims. The U.S. raises a whole host of concerns that the U.S. obligation to Iran is contingent, or due at a later date. C.C.P. § 708.510 encompasses these obligations by its language, that it reaches debts that are due, due at a later date, or even conditional upon later events.

Plaintiffs are entitled to the assignment order in that a third party obligor has no standing to object. Directly on point is ***Kracht vs. Perrin, Gartland & Doyle***, 219 Cal.App.3d 1019, 268 Cal.Rptr. 637 (Cal.App.4 Dist. 1990), in which the California Appellate Court held that, notwithstanding the actual granting of an assignment, that the obligor (attorneys facing a malpractice action) had the right to defend against the enforcement. The court made it clear that the underlying court, in the granting of the motion, was not obligated to make a finding, one way or another, whether the subject matter thereof was assignable or otherwise. The court

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO STATEMENT OF INTEREST OF THE UNITED STATES - CASE NO. 2:08-CV-00740-GAF (SSx)

6

1 | stated at page 1021 and the ensuing footnote, as follows:

> "In September of 1988 Kracht (as judgment creditor of Hogue from the prior action) sought and obtained a court order, pursuant to Code of Civil Procedure sections 708.510 and 708.520, compelling Hogue to assign all choses in action which he held against Attorneys. The order was obtained without notice to or opposition by Attorneys. [1] Kracht thereafter filed a complaint for legal malpractice against Attorneys as assignee of the claims."

> [1] Code of Civil Procedure section 708.510 does not require that notice of the motion to cause an assignment be given to the obligor of the judgment debtor. The order of assignment does not affect the obligor's rights until notice of the order is received by the obligor. (Code Civ.Proc., § 708.540.) The fact that the choses in action were ordered assigned under Code of Civil Procedure section 708.510 does not preclude a challenge to whether the claims were assignable ab initio, because the Legislature specifically noted that **section 708.510 "... does not make any property assignable that is not already assignable."** (See Legis.Com.Comment, Assembly 1982 Addition, West's Ann.Code Civ.Proc., § 708.510.) (Emphasis added)

This proposition is likewise consistent with the structure of C.C.P. § 708.510, in which the purpose is to permit a Judgment Creditor to reach a Judgment Debtor's contractual obligations, whatever they may be. As stated in *Debt Collection Practice in California*, 2d Edition, CEB, the author stated at page 1129, as follows:

> "An obligor's rights are not affected by an order assigning the rights to payment until the obligor receives notice of the order. C.C.P. § 708.540."

Under C.C.P. § 708.540, an obligor is a person who is or may be obligated to make payment to the Judgment Debtor.

### III. ADMITTED WAIVER OF SOVEREIGN IMMUNITY OF THE UNITED STATES.

The U.S. has waived its sovereign immunity before the International Tribunal, a matter not in dispute. (Statement of Interest, p. 15, ll. 3-6)

The U.S. thereafter cites *Flatow v. Islamic Republic of Iran*, 74 F.Supp.2d 18 (D.D.C. 1999), for the proposition that an express waiver of sovereign immunity would not permit a third party to assign U.S. funds owed to Iran. In Flatow, the Judgment Creditor proceeded with a traditional levy in which the court quashed on the basis of *Blue Fox, supra.* Flatow is distinguishable because these Plaintiffs seek an involuntary assignment, consistent with such cases as *Price v. Forrest* and

its many progeny. The U.S. does not seek to reconcile the fact that an involuntary assignee can enforce a non-immune obligation owed by a sovereign by and through such cases as *Price v. Forrest.*

## IV. CHANGES TO FSIA ENABLE THESE CREDITORS TO ENFORCE JUDGMENT.

While this judgment is 16 months old, the changes to the FSIA permit a judgment holder to levy and execute under current 28 U.S.C. § 1610(g). This judgment qualifies to judgments under 28 U.S.C. § 1605A, which at its passage would clearly refer to judgments in place. Otherwise, this legislation would be absurd in entitling "non-existent judgment creditors" to levy upon assets. The legislation clearly referred to judgments in place, as opposed to judgments due at a later date. Absurdities in statutory interpretation are always disdained. In *RCJ vs. Diana Bonta*, 91 Cal.App.4th 986 (Cal.App.2 Dist. 2001), the court stated as follows:

> "Our objective in a case such as this is to ascertain the congressional intent and give effect to the legislative will." (*Philbrook v. Glodgett* (1975) 421 U.S. 707, 713 [95 S.Ct. 1893, 1898, 44 L.Ed.2d 525].) On another occasion, the court stated, *"We do not, however, construe statutory phrases in isolation; we read statutes as a whole."* (*United States v. Morton* (1984) 467 U.S. 822, 828 [104 S.Ct. 2769, 2773, 81 L.Ed.2d 680], fn. Omitted.) *Further, in interpreting a statute, the Supreme Court has emphasized the importance of avoiding: "absurd results"* (*United States v. Turkette* (1981) 452 U.S. 576, 580 [101 S.Ct. 2524, 2527, 69 L.Ed.2d 246]); " 'an odd result' " (*Public Citizen v. Department of Justice* (1989) 491 U.S. 440, 454 [109 S.Ct. 2558, 2567, 105 L.Ed.2d 377]); or "unreasonable results whenever possible."

## V. ASSIGNMENT OF RIGHTS PER SE DOES NOT VIOLATE SOVEREIGN IMMUNITY.

The government asserts that payments by the U.S. to these Plaintiffs violates sovereign immunity. (Statement of Interest, ¶ 9, ll. 8-12.) This is an incorrect statement in that the U.S. would be paying Plaintiffs standing in the shoes of Iran, which would be no different than the U.S. paying a bankruptcy trustee, who likewise would be standing in the shoes of the creditors, or an insurance subrogee standing in the shoes of the insured, or paying a receiver on behalf of the aggrieved creditor. As the U.S. has not reconciled *Price v. Forrest* and its progeny, the fact of

payment to an assignee of an obligor of a sovereign holding a non-immune liability, does not contravene sovereign immunity.

The U.S. repeatedly makes clear its concern that a court cannot order or direct payment of the funds due the U.S. Treasury, which by their very nature are protected by sovereign immunity. See *Blue Fox, supra.* The U.S. concedes that the U.S. has waived sovereign immunity in favor of Iran. This is no different than what the U.S. faced in *Quarles, supra*, in which the court held that the limit and scope of sovereign immunity cannot be altered by the fact of contractual subrogation, placing the subrogee in the position of the creditor.

## VI. ASSIGNMENT OF CLAIMS ACT.

Plaintiffs acknowledge that the Assignment of Claims Act bars in most part the voluntary assignment of claims, serving the purpose of protecting the government. The U.S. argues that a court-ordered assignment is different that subrogation, bankruptcy, or probate, but without any authority. An involuntary assignment is integral to bankruptcy subrogation or probate, and no different than a court-ordered assignment, as here.

## VII. FOREIGN POLICY INTEREST.

The U.S. argues that entering an assignment order would infringe upon the U.S. foreign policy, and furthermore impairing the ability of the Executive to exercise his foreign policy prerogatives. The U.S. also argues that the entry of an assignment order may adversely impact continuing litigation in the Iran-U.S. Claims Tribunal in which the concern would be that an assignment order would violate international obligations by the U.S. to directly compensate Iran. The U.S. cites an incident in which the U.S. courts failed to enforce a Tribunal award against a U.S. national, and in which the Tribunal found the U.S. liable for damages to Iran. The summary of the U.S. analysis is that the U.S. paying Iran's assignee (the Plaintiffs here) would not absolve the U.S. of liability to Iran for any Tribunal award, ultimately compelling the U.S. to pay twice.

It should be noted that Iran has not opposed this motion, leading to an inference that Iran concedes the merits of it, a matter not addressed by the U.S. Additionally, in the enactment of 28 U.S.C. § 1605A, the legislation did not carve out any specific assets, and by its language, made all assets available for levy and execution under 28 U.S.C. § 1605(g)(1) (Statement of Interest, p. 16, ll. 9-17).

Congress clearly could have exempted this class of assets, and chose not to do so, leading to an inference that the courts cannot selectively exempt certain assets of Iran based upon considerations which Congress would have contemplated, but rejected in passing 28 U.S.C. § 1605A, as the virtual abolition of FSIA to Iran.

The entire purpose of 28 U.S.C. § 1605A is to enable Judgment Creditors to reach assets of Iran in the broadest sense. A review of the bibliography of Iran/U.S. relations clearly surfaces the fact that the U.S. owes monies to Iran, and by which such an obligation can and should be reachable. Congress clearly had in its power to make these types of claims off limits, and chose not to do so. Foreign policy is always part and parcel of any changes to the FSIA, and would have been considered and subsumed in the current litigation.

## VIII. CONCLUSION.

The U.S. is clearly correct that the U.S. is immune from direct levy through a writ of execution, which was the outcome of *Flatow* and many other cases, and in which the courts made it abundantly clear that such process can never reach the funds of the U.S. Treasury. Plaintiffs do not dispute this proposition. The U.S., however, has not disputed the proposition that non-immune claims against a sovereign are involuntarily transferable, thereby permitting the granting of this motion.

DATED: June 16, 2008        COOK COLLECTION ATTORNEYS

By: /s/ David J. Cook
DAVID J. COOK, ESQ. (SB# 060859)
Attorneys for Plaintiffs
STEVEN M. GREENBAUM, ALAN
HAYMAN, and SHIRLEE HAYMAN

F:\USERS\DJCNEW\iran.opposstatement